THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THURMAN NELSON, Plaintiff in Error.

*Opinion filed February 18, 1926.*

1. CRIMINAL LAW—*act providing penalty for injuring persons or property by explosives is valid.* The act of 1921 providing a penalty for injuring persons or property by explosives does not violate section 13 of article 4 of the constitution because it does not specify in its title that it is to punish persons injuring property as well as those destroying property. (*People* v. *Smith,* 318 Ill. 114, and *People* v. *Newcom,* id. 188, followed.)

2. SAME—*what may be considered on oral motion to quash indictment—review.* An oral motion to quash an indictment is in the nature of a general demurrer and raises only questions concerning defects in substance, and on a writ of error the trial court's ruling in denying such a motion can be held to be error only where there are innate and substantial defects in the indictment which render it insufficient to support a judgment.

3. SAME—*when the question of sufficiency of evidence may be raised—bill of exceptions.* Where a bill of exceptions does not purport to contain all the evidence the verdict of the jury will not be questioned, but where the record is sufficient to show that the bill of exceptions contains all the evidence upon which the parties rely, the plaintiff in error may raise the question whether the evidence sustains the verdict. ·

4. SAME—*when bill of exceptions sufficiently purports to contain all the evidence.* The certificate of the court reporter, alone, that the bill of exceptions contains all the evidence is not sufficient for that purpose, but the bill of exceptions is sufficient to show that it contains all the evidence upon which the parties rely, where, immediately following the testimony, are the statements, "Defendant rests" and "People rest," followed by the certificate of the reporter that it contains all the evidence and by the certificate of the trial judge.

5. SAME—*when, only, will court interfere with verdict.* It is only when the court is satisfied, from a consideration of the whole evidence, that there is a reasonable doubt of the defendant's guilt that it will, on the evidence, alone, set aside the verdict of the jury finding the defendant guilty.

6. SAME—*what does not render voluntary statement inadmissible.* If a statement of the accused is otherwise voluntary, the

320—18

fact that he was vigorously questioned by police officers in the absence of his attorney, his friends or relatives does not render the statement inadmissible, and it may be introduced to impeach his testimony on the trial.

7. SAME—*instructions will not be considered if not in bill of exceptions.* Where the bill of exceptions contains no instructions, either given or refused, no question upon any instruction is preserved for review.

WRIT OF ERROR to the Circuit Court of Saline county; the Hon. A. E. SOMERS, Judge, presiding.

A. C. LEWIS, and H. R. LIGHTFOOT, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, CHARLES T. FLOTA, State's Attorney, VIRGIL L. BLANDING, and CHARLES F. MANSFIELD, for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

James Newcom and Thurman Nelson were indicted by the grand jury of Saline county for the statutory crime of willfully and maliciously damaging, injuring and defacing, by means of an explosive, a building occupied by Frank McIlrath as his residence. Separate trials were had. Nelson was found guilty by a jury. His motion for a new trial was denied, judgment was rendered, and because of his age, eighteen years, he was sentenced to the Illinois State Reformatory at Pontiac. By this writ of error he seeks a review of the record.

At about four o'clock in the morning of June 15, 1924, an explosion occurred at the home of Frank McIlrath, in Dorrisville, Saline county. Glass in windows and doors of the house was broken, the porch was blown up and the building was damaged in other respects.

The evidence offered by the prosecution shows: On the evening of the 14th day of June, at about seven o'clock, M. R. Winkelman, Charles Evans, James Newcom and Thurman Nelson met in Dorrisville and drove in a Ford coupe to the home of Nelson's grandparents, a short distance west of Harrisburg, where Nelson resided. Nelson left his companions there, drove away to call on a young woman and with her attended an ice cream supper given in the vicinity. During Nelson's absence Winkelman, Evans and Newcom remained with Nelson's grandparents on their front porch and partook occasionally of intoxicating liquor. Nelson returned in about two hours, and after the party had another drink the four men drove to Salt Wells, about sixteen miles distant, to attend a barbecue. They arrived at midnight and remained about an hour. On their return they stopped at a blacksmith shop in Dorrisville, where Evans and Newcom left the automobile, walked to an alley adjoining Evans' home and returned in a short time with about fifteen sticks of permissible powder. This explosive, Evans testified, had been stored in his barn about two years. Evans and Newcom returned to the car and all drove to a place known as "No Man's Land," on North Main street, in Harrisburg. Here Nelson and Newcom left the car and prepared fuses for the explosive. After this was done the party of four drove to a point near the home of Hubert Hawkins, in Harrisburg. Nelson and Newcom each took a bunch of the sticks of powder and proceeded up the street. Winkelman and Evans remained in the automobile and the other two returned in about five minutes. The party then drove to a school house in Dorrisville, within a block of the home of Frank McIlrath. Again Nelson and Newcom took sticks of the explosive and walked in the direction of McIlrath's house while the automobile's lamps were turned out but its motor was kept running. In a very short time they came running around the school house, jumped in the automobile and the party returned to Nelson's home. While

on the way, when they reached a place called Liberty, Newcom said, "There went one of those shots now." They arrived at Nelson's home at about 4:20 o'clock in the morning and after sitting on the back porch for a while they retired. Nelson asked his grandmother whether she heard the shots, and she answered that she heard two. The men had breakfast at Nelson's home at six o'clock and then went to Tuttle Bottoms and had another drink. They returned at seven o'clock. Winkelman asked Nelson whether he could use the car to drive home and Nelson assented. On the way Winkelman found five sticks of the powder still in the car and he threw them out, one at a time, along the highway. One of these sticks was recovered and offered in evidence. Winkelman returned to Nelson's home about nine o'clock and found that Nelson had been arrested and taken to jail.

George Kerr saw two men, at a distance of about seventy-five feet, running around the school house in Dorrisville shortly before the explosion. He identified one as Newcom, and while he did not see the face of the other thought he was Nelson, judging from his bulk. Nelson and Newcom were also seen by Hugh McIlrath with other persons at about half-past six o'clock on the morning of June 15, 1924, going toward Tuttle Bottoms. Shortly after receiving information of the explosion, R. E. Cline, a deputy sheriff, took measurements of footprints which he found on the south side of the school house where Nelson and Newcom had passed. These measurements corresponded to those of Nelson's shoes.

A written statement made by Nelson on June 16, 1924, in answer to questions propounded to him by the State's attorney and police officers, was offered in evidence. In this statement Nelson said that no person other than Newcom accompanied him on the night of the explosion; that Newcom went to his home with him and that both retired about 2:30 o'clock A. M.

Nelson testified in his own behalf that he, with Newcom, Evans and Winkelman, arrived at his grandfather's house at about 2:15 A. M. on June 15, 1924; that shortly thereafter they retired and that he and Newcom remained in bed until morning. Both of his grandparents corroborated his testimony with reference to his arrival with Newcom, Evans and Winkelman at the time specified. The grandmother further testified that at about three o'clock in the morning she heard an automobile leave; that she then went to the room where Nelson slept to ascertain whether he had gone but that she found him in bed with Newcom; that she then discovered that Evans and Winkelman had left in Nelson's car; that they returned later and all had breakfast at about 5:30 A. M., and that nothing was said to her about hearing an explosion. Two witnesses testified that they saw Nelson, in company with another person, at about two o'clock on the morning in question turn into the lane leading to his grandparents' home. Another witness saw Winkelman, and a man with whom the witness was not acquainted, drive out of the lane between 2:30 and 3:30 o'clock on the same morning.

The indictment and conviction of plaintiff in error are based upon section 1 of "An act to punish persons for destroying property, or inflicting injury to persons, by means of any bomb, dynamite or other explosive, or by means of any similar instrument or implement," approved June 21, 1921, (Laws of 1921, p. 401,) which provides: "Whoever shall willfully and maliciously destroy, damage, injure or deface any building used or designed for human occupancy, or shall attempt so to do, by means of any bomb, dynamite or other explosive, or by means of any similar instrument or implement, shall be imprisoned in the penitentiary for a period of not less than one year nor more than twenty years." The first contention of the plaintiff in error is that the act contravenes section 13 of article 4 of the constitution, which declares that no act "shall em-

brace more than one subject, and that shall be expressed in the title," because, it is asserted, the title restricts the act to persons who destroy property or inflict injury upon persons by certain means and does not include persons who merely damage, injure or deface property. A like attack was made upon the validity of the statute in *People* v. *Smith,* 318 Ill. 114, and *People* v. *Newcom,* id. 188, and the act was sustained in both cases. It was there shown that the contention is without merit.

Plaintiff in error further insists that each count of the indictment is defective. A general motion to quash the indictment, without specifying any particular wherein it was defective, was made orally in the circuit court and it was denied. The motion was therefore in the nature of a general demurrer and raised only questions concerning defects in substance. On a writ of error the trial court's ruling in denying such a motion can be held to be error only where there are innate and substantial defects in the indictment which render it insufficient to support a judgment. (*People* v. *Munday,* 293 Ill. 191.) Certain counts of the indictment charged, in varying language, that James Newcom and Thurman Nelson did on June 15, 1924, by means of a certain explosive, unlawfully, willfully and maliciously damage, injure and deface a certain building used and occupied by Frank McIlrath as a residence. Other counts charged, in addition, that the building was used for human occupancy and designed for that purpose, and the explosive used was particularly specified. The facts stated constituted the crime defined by the statute. The indictment was sufficient in substance and the motion to quash it was properly denied.

Plaintiff in error contends that the evidence is insufficient to sustain the judgment. Defendant in error, on the contrary, asserts that plaintiff in error cannot raise the question because the trial judge has not certified that the bill of exceptions contains all the evidence and it cannot be presumed that there was no other evidence. Where the

bill of exceptions does not purport to contain all the evidence the verdict of the jury will not be questioned. (*Ballance* v. *Leonard*, 37 Ill. 43; *Board of Trustees* v. *Misenheimer*, 89 id. 151; *Village of Des Plaines* v. *Winkelman*, 270 id. 149.) The certificate of the court reporter that the bill of exceptions contains all the evidence is not sufficient for that purpose, (*Cogshall* v. *Beesley*, 76 Ill. 445; *People* v. *Clark*, 298 id. 170;) but it is sufficient if the fact affirmatively appears from the record itself that the bill of exceptions contains all the evidence. (*People* v. *Henckler*, 137 Ill. 580; *People* v. *Scanlan*, 265 id. 609; *Central Illinois Public Service Co.* v. *City of Sullivan*, 294 id. 101.) Immediately following the testimony in the bill of exceptions in the instant case are the statements, "Defendant rests" and "People rest." The court reporter then certifies that the bill of exceptions contains all the evidence heard by the court and jury, and the certificate of the trial judge concludes the bill of exceptions. These statements and certificates sufficiently show that the bill of exceptions contains all the evidence upon which the parties relied.

On the question of the sufficiency of the evidence to sustain the judgment, it is true that the most direct and positive evidence offered by the prosecution was the testimony of Evans and Winkelman, the two accomplices. There was, however, corroborative evidence. Newcom, Nelson's companion, was recognized running around the school house near the scene of the explosion shortly before it occurred. While Nelson was not as positively identified, yet there was evidence, in addition to the testimony of the accomplices, to show that he actively participated in the commission of the crime. We cannot say, on all the evidence, that the jury was not justified in returning a verdict of guilty. It is only when the court is satisfied from a consideration of the whole evidence that there is a reasonable doubt of the accused person's guilt that it will interfere with the verdict of the jury. *Miller* v. *People*, 229 Ill.

376; *People* v. *Grove,* 284 id. 429; *People* v. *Jones,* 310 id. 275.

Plaintiff in error also contends that his written statement of June 16, 1924, used by the prosecution to impeach him, was incompetent because (1) at the time it was made he was not represented by counsel; (2) it was obtained by duress; and (3) it was not shown that when offered in evidence it was the same as when it was signed. If the statement was otherwise voluntary, the fact that the accused person was vigorously questioned by police officers in the absence of his attorney, his friends or relatives would not render the statement inadmissible. (*People* v. *Vinci,* 295 Ill. 419.) Nothing in the record shows that any threats or promises were made to induce plaintiff in error to make the statement or that for any other reason it was involuntary. The statement consisted of five pages. The notary public by whom plaintiff in error was sworn to it identified the last page, on which his signature and seal appeared. The chief of police of Harrisburg, who was present when the statement was made, testified that it contained the questions asked plaintiff in error and the answers he made to them. On cross-examination, however, the chief of police admitted that he had not seen the statement since the day it was signed, and that he could not say whether it set forth, from beginning to end, the identical questions asked and answered. On the trial plaintiff in error testified that he misunderstood certain of the questions in the statement. His testimony with reference to the persons who accompanied him on the night when the explosion occurred differed materially from his answers in the statement on the same subject. The statement was admissible for the purpose of impeachment. (*People* v. *Jordan,* 303 Ill. 316.) Its admission was limited to that purpose by the trial court.

Complaint is made of certain instructions given at the request of the prosecution. The bill of exceptions contains no instructions, either given or refused. Since they are not

a part of the record no question upon any instruction is preserved for review. *Greenwell* v. *Hess,* 298 Ill. 459; *Drew* v. *Beall,* 62 id. 164; *Prindiville* v. *People,* 42 id. 217.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*